Good afternoon, Your Honors. Margaret Ling for Mr. Gonzalez-Longoria. May it please the Court, Honorable Opposing Counsel, this case presents the issue of whether the crime of violence definition in 18 U.S.C. section 16b is unconstitutionally vague on its face. As the Court is aware, a vagueness challenge is currently pending before the Supreme Court in United States v. Johnson involving the similarly worded residual clause of the Armed Career Criminal Act. An oral argument in Johnson was heard last week. Why shouldn't we wait, what is it, six weeks or so? We'll have a decision. I mean, why not? I know your client's locked up, but given the state of our current precedent, it seems like you need some help in Johnson. So what's your view on whether we should wait to see what the Supreme Court does? Your Honor, I fully understand that the Court may prefer to wait. We, having said that, we do not feel that our case is totally dependent on Johnson. We certainly don't feel that our case is foreclosed. As the government has said, there's been no decision that's addressed 16b. But, of course, we did bring this challenge in the context of Johnson and the ACCA, which is very, very similar. So the reason, really, we brought it is my client got a sentence of 27 months, and should the Court rule in our favor, he'd be looking at, I think, 15 to 21. And by my estimates, he would be at 15 months probably in July or August or September. So, I mean, yes, I have to say that the Court probably could wait and the Court may wish to wait. Nevertheless, we wanted to get this in front of the Court because it's on a short time frame, just to bring it up, and so that the Court could make a decision quickly. It's sort of a tricky, because to the extent that Johnson's relevant, then we're controlled by Gore, right? If the ACCA residual clause is sufficiently parallel to warrant a hold or warrant to wait, then we've got controlling law to the opposite until the Supreme Court does something. Your Honor, I don't mean to say that it's totally, and again, I want to make clear that we're not saying it's, and I think we said that in our brief, it's not totally controlled by Johnson. What I'm saying, I mean, by what happens in ACCA and Johnson, I do think, though, as we set out in our brief, well, the statutes are different. They're slight, they're somewhat different. One's substantial risk. ACCA is quite different in that it has that list of enumerated offenses, which we don't have in 16B. Ours is substantial risk of force, right? Substantial risk of— A serious potential risk of injury. Don't you look at Scalia's sort of driving questioning to be built around the word potential, which is absent here? Your Honor, I think that's part of it, but I think if you look at the argument, the transcript, or if you've listened to the argument that took place last week in the Supreme Court, you can see what was really concerning the Court, especially Justice Roberts and Justice Sotomayor, was this problem of what is the ordinary, typical case and how to determine it. Well, you've read it closely. I skimmed it. Scalia seemed, if I'm right, when he's talking to the Deputy Solicitor General, he disclaimed, he seemed to orally disclaim that he would see vagueness in substantial risk of physical force. Do you remember that moment? I do remember that moment, Your Honor, but I disagree because I think what he's saying, is the government was trying to say that what the Petitioner was saying is, you know, it's serious potential or substantial risk, and there's all these other statutes that have that language out there, and that they'd all go out the window, and that, you know, that would be way overbroad. But Justice Scalia pointed out, saying, no, that's not exactly—that's not the problem. The problem is in what the Petitioner started off with and what we feel is the main problem also in our case, is how to determine the ordinary case. Because in this case, just like—just like ACCA, you have to be looking at—you're looking at an elements-based approach, what is the nature of the offense. And then, as they pointed out in that argument, you know, it's a continuum for virtually every case. And I think it was Justice Roberts that talked about, like, you know, he said, well, wouldn't kidnapping qualify? And they pointed out that kidnapping can be anything from, you know, keeping your child—if you're a non-custodial parent, you keep your child over, you know, the time, or you have a gun, go up to someone on the street and grab them. So the question is—and it's the same question here—is how do you determine what is the ordinary case? And until you've made that determination, you don't even get to the question of substantial risk. So. At any rate, that was my—actually, my kind of poise I was trying to make about this case. That's the number one problem, is that, you know, how to determine what the ordinary case is. And— With the—from the standpoint we have when we're looking at a due process vagueness, is the recidivist, or is someone like your client, is he on fair notice? The second prong is the arbitrary enforcement issue? Right. The second prong—and they're two separate— is making a claim of vagueness—well, let's start with first principles. Is there a difference in a vagueness attack on a sentencing provision as distinct from an underlying criminal offense? There isn't a different standard. And I think that, again, if you look—well, there's Batchelder that said there's no different standard, and then the Supreme Court in that argument was something, again, the government tried to argue, but it was clear that the Supreme Court was not buying that. I think it was Justice Ginsburg who said, no, that's not the way it goes. The Chambers is consistent with that position? I'm sorry, Your Honor? The Chambers is consistent? I believe so, Your Honor. I mean, certainly there's nothing in James and Sykes that would indicate that there's a different standard in a sentencing recidivist context than in a sentencing or an ordinary penal liability statute. What—you know— Has the Supreme Court—and they might—we'll see what happens in Johnson next month, but has the Supreme Court struck down a sentencing provision as being vague, other than it may be capital cases? Your Honor, I don't—I'm not sure how to answer that. I mean, obviously we're hoping they're going to in Johnson, and, you know, I can't read the tea leaves, but it certainly seemed to me that they were very strongly—there's a lot of problems with it. It was clear that the Court was having a lot of problems with it when they examined it. And you might be right. I mean, the Supreme Court's at least intimated that the standard is the same, but why does the arbitrariness issue apply in a sentencing enhancement? Because it seems to be aimed at law enforcement inconsistently applying a law. I mean, the Morales City of Chicago case, you've got a cop on one street corner saying this is loitering. A few blocks away, a different cop doesn't think the same activity is loitering. Here judges are deciding the sentencing, and certainly judges are—you know, some people say are arbitrary, but it seems to be a different issue than law enforcement arbitrariness. So why should—does that present a problem with the sentencing? Well, again, I mean—and I don't want to ruffle any feathers or say that, you know, the Court is arbitrary, but again, first of all, there are— Go ahead. Thank you, Your Honor. If I do say things that seem, you know, to ruffle feathers, I don't mean it personally, I must say, Your Honor, but I'm trying to make my argument. But the first thing is, there definitely are cases, and I think it's Colander that talks about judges and juries. I mean, it's definitely in there. And I think actually the Reese case, which is not in our brief, but it's in a law review article, does talk about judges as well. The way it's arbitrary enforcement with judges, and perhaps it's arbitrary analysis or decision-making, again, because you've got this continuum. And I don't know, if I could point to one example that's come up in this Court, and again, Judge Costa, I hope you won't take this personally, but if you look at Sanchez-Espinal, I believe you were on the panel, you'll see that they talk about, you know, violation of a protective order. And you see that the conduct—it's in the opinion—the conduct rages from harassment to strangulation. And yet we still get, with really no guiding principles whatsoever or indication of how we come to that, that, oh, therefore this statute has a substantial risk of force. And, you know, the government, in its brief, has put out many—you know, the same has been done in ACCA, many types of, well, you can look at these objective factors like statistics, but— You are not even making an as-applied challenge, are you? Your Honor, our as-applied challenge is subsumed within the facial challenge. And the reason it's subsumed within the facial challenge is because we are saying that, in effect, this statute is vague in all its applications. And when I say that, what I mean is— How is it vague with respect to the application of this particular defendant? For this particular defendant, it's—first of all, the statute, by its term, bodily injury, includes everything from pain and physical illness to, you know, some kind of physical pain. Illness all the way up to pain. So there's no way—it's a continuum. And there was nothing—he would have to look vague as to this defendant. He would have to know, you know—he can't look at his own conduct. The statute—the way the statute works, you don't look at your own— The government hasn't argued that, but why wouldn't—why wouldn't the fact that we've got a—whatever—a disjunctive mens rea statute here, so we'd be using the modified categorical approach to sort of figure out which one he was—and then, based on the indictment, the kicking, and he admits exactly to the indictment, we're in a world of intentional bodily harm. Once you've got that, I don't see why we don't have a 16A crime of violence. Because we don't have 16A because it doesn't involve a use of force. Well, that's under the Villegas decision, but you saw the district court struggling with that in terms of Castleman. Right. But the problem is—well, I don't think Castleman applies. The problem is—and the problem with the Galvez Morales opinion is—and I'm going to have to say it—it's looking at his conduct. His conduct is not an element. What is the element is that he intentionally, knowingly, and or recklessly caused bodily injury. That's what you have to look at. Then you look at the—that's the subsection of the statute under which he was convicted. Nobody disputes that. That's not a dispute. What was incorrect in Galvez Morales, and also incorrect in the government's brief, is to then go on and say, well, he was on notice because his conduct involved this or that or the other. You know, hitting, kicking, and striking, which is just like what happened in Galvez Morales. But that is not—that's not the issue. You don't look at the defendant's conduct, number one. But number two, that's not part of the categorical approach. I mean, that's exactly what Descombes said. So in that sense, the panel in Galvez Morales, I think, it was flawed. Lewandt. I'm sorry? Lewandt. Thank you, Your Honor. I wasn't going to actually say that. Lewandt. I wasn't going to actually say that, but— Is crime and violence substantial risk of force? Is that also in 3142 in the bail—bail provision? Yes, it is. Yes, it is. So the—your argument to be intellectually consistent would— Well, let me make a couple of points here. First of all, in the—I want to say, first of all, right off the bat, that in the Gogan statute—Gogan case that we cite, in that case, that was the flag on the guy's jeans, the flag contemptuous thing. The Court made the point there that just the fact that there's many other statutes that have the same label, you know, have the same language, doesn't mean that the statute is pass-is-must-or is not a problem. The thing is here, if you look—and the government cited to a lot of the statutes in the S.G.'s brief, and virtually all of those—indeed, I think all of those—were substantive liability statutes. So it's always going to be an element there of the risk of force. And so that means it's going to have a jury determination, or the defendant's going to admit it. So to the extent that there are federal statutes where it's not an element, yes, you would have the same objections. But where it is an element, as I think it is in 924C, and there, of course, it's also cabined by the fact that it's, you know, in connection with the drug offense, there's other things that are going on there. But honestly, the universe of things that would be exactly the same is actually—it's not what it would appear to be. That's my train of thought. Yeah. But the Court actually made that point as well in—well, one other thing I want to say about the vagueness is that Courts have also used different analytical frameworks. So not only are you looking at what is the spectrum, but various Courts have looked at different analytical frameworks to determine—like this Court will use, in many cases, the ACCA analytical framework to look at 16b, even though it's slightly different, whereas, like I think the First Circuit will not. It says that that's not appropriate. What's your best case for saying you can bring a facial vagueness challenge? Your Honor, I think that would be United States v. Morales, which is in our brief. And in that case, I think if you read Justice Breyer's concurrence, he makes that point very, very clear. Chicago v. Morales. Chicago v. City of Morales, yes. He makes that point very, very clear where he says that, you know, I don't find that—it's not that this is vague under the notice. It's just that the arbitrary enforcement—and you can bring that regardless of whether there was notice or not. And I see my time is up. Thank you. Thank you, Ms. Ling. Mr. Reed, we'll hear from you. May it please the Court, good afternoon. Your Honor, it's John Reed on behalf of the United States Supreme Court. Mr. Gonzalez-Longoria cannot prevail here for at least three reasons. Number one, as we stand here today, the premise of his argument is foreclosed. Number two, he has not and cannot show that the statute is vague in all of its applications, as he must. And number three, the statute does provide sufficient notice in the form of a permissible normative principle, and it contains a core standard of conduct that is comprehensible to the average person. I will start just very quickly to rebut the last thing that Ms. Ling said in response to Judge Costa's question on the best case for making a facial rather than an as-applied challenge. Under this Court's framework, established in cases like Clark, Brooks, and McCrae, which Judge Jolly authored, none of which are discussed in the defendant's brief or reply brief, when a statute does not involve constitutionally protected conduct, a defendant has to show its vagueness as applied or, in all of its applications, usually starting as applied with his own conduct. Now . . . What about Morales, though, which she cited? I mean, I read it. They go through the analysis. First, the defendants were arguing, well, it's First Amendment protection. And they said, no, standing on a street corner doesn't implicate the First Amendment. Then they said, well, maybe there's this liberty interest. And the Supreme Court says, well, maybe. But then they say, there's no need, however, to decide about this liberty interest because it's clear that vagueness of this enactment makes a facial challenge appropriate. I mean, why doesn't that say you don't even need these other issues about constitutionally protected activity? Your Honor, I cite in my brief United States v. Clark, which applies the as-applied challenge. Clark, in turn, relied on a case called Rourke and Hardy v. City of Austin. Rourke and Hardy, 522F3rd at 551, Note 19, addresses the argument that Ms. Ling just made, relying on Morales. And this Court said, Morales involved constitutionally protected conduct. Therefore, the defendant could not rely only on making a facial challenge because the statute is allegedly permeated with vagueness. And this Court looked at the facts as applied in that particular case. And so I think this Court's binding precedent has already rejected that. What about Justice Scalia's dissent in Sykes? And, you know, if you've listened to the argument in Johnson, I mean, is he viewing it as an issue of as-applied vagueness problems or just facial vagueness and validity? It's unclear because if you read Justice Scalia's dissent in Morales, he specifically says, whoa, plurality, you're not making an as-applied challenge. So he seems to be a champion of the fact that you have to make an as-applied challenge. But I will grant you that his dissent in Sykes, it's unclear. I'm not really sure myself from reading it if he's looking at it as applied or facially. But that is the framework that this Court has established in construing cases like Morales and Colander and all of the cases that Ms. Ling did cite. Now, there seems to be a difference between those cases that involve the constitutionally protected conduct, like loitering in Morales and other First Amendment rights in Coates and Colander, and this idea that the statute lacks any standard or has no core. To me, that sounds like a facial challenge, but in some respects it actually isn't as applied because we're saying, well, our defendant here can't understand, well, he has lax notice as to what the statute covers, but also I can't understand how it's going to be enforced or applied to me. So that does sort of, I think, bring it back into the realm of an as-applied. He pled to the 1326, right? And at the guilty plea, originally the indictment said aggravated felony, but then it was agreed to by all parties to put it off to sentencing? Is that what happened in this case procedurally? The aggravated felony? The underlying, the enhanced. Oh, the enhanced, yes. He agreed that he committed the underlying offense, but And it was described in the papers as an aggravated felony, but then at the rearrangement, everyone agreed to dispute it, put it off to sentencing? Yes. Everyone agreed that he committed the offense, but he did reserve the right to challenge its categorization. But the documents, the underlying documents, the fact-specific documents, you supplemented to us, but they weren't offered at sentencing? That's true. What's the value of those? Do you accept their position that it's a categorical approach only? I think it's a modified categorical approach. That's what this Court did in the Galvez-Morales case, where the defendant was indicted exactly the same way that Mr. Gonzalez-Longoria was indicted. If you read the indictment in our case and the indictment as described in Galvez-Morales, they're the same. The plea agreements are also both the same, where the defendant admitted to conduct that was intentional and knowingly and recklessly. And this Court in Galvez-Morales said, well, the admission of intentional and knowingly, and I do agree that the conduct itself after the scams is not relevant, but he agreed to committing the offense knowingly and intentionally. Therefore, we have, and that's an element, so he agreed to the element of knowing and intentionally committing an assault causing bodily injury. And I think that's what gets you to an offense that by its nature involves a substantial risk of the use of force. But then what are you doing with Villegas? Villegas was the misdemeanor version. And if I'm thinking of the correct case, Your Honor, that you, Villegas-Hernandez? Yeah. That had to do with the, that had to do with the misdemeanor version of Texas assault causing bodily injury. The 2201 misdemeanor? Correct. Correct. And this Court expressed no opinion as to the analysis or proper characterization of the felony version. So I don't think Villegas-Hernandez is. You're not arguing here 16A applies? That's correct, because, and I don't think I can in all candor, because physical force is not a necessary element of the offense. But, and Your Honor referred to Castleman, just because it's not an element doesn't mean that at a minimum there isn't a risk of use of force when one commits an assault causing bodily injury in an intentional manner, right? And so that's how you get back there, okay? What's your thought on a hold for Johnson? You've read the transcript, you've read the government's appendix that implied that 16B is perhaps implicated by an ACCA residual clause ruling? 16B could be implicated, depending on what the Supreme Court says in Johnson. But I don't accept the idea that if the ACCA falls, 16B necessarily does, because there are textual and contextual differences between the two. So I agree with Ms. Holland. Well, and Judge Higginson brought some of those out in questioning defense counsel that 16B is a substantial risk and the force language. But it does seem in one respect at least that 16B may be more problematic from a vagueness challenge, and that's the fact that the Armed Career Criminal Act in the residual clause gives the example of burglary, arson, or extortion, and then goes on with the residual language. And it seems like the Supreme Court in some of these decisions has said that those enumerated offenses provide a benchmark or a minimum. And here, with 16B, do we have any offenses like that that provide that guidance? Well, we certainly have the — I'll give you two answers. The first is we have the Leocal decision, which, by the way, is the only Supreme Court decision addressing 16B. And Justice Rehnquist, writing for the Court, Chief Justice Rehnquist in 2004, wrote that down to compare that with the offense of DUI, drunk driving, and said that offense does not fall within the parameters of 16B. So we know that burglary is the classic example, so there is somewhat of a baseline established, I think. But Congress didn't give those examples like it did in the Armed Career Criminal Act. That's true. And then the second part of my answer, Your Honor, is if you read Justice Scalia's dissent in — I think it was the James. It was either James or Sykes. But one of them, one of his concerns is — and other members of the Court as well — expressed some confusion on that, with respect to that list, because they don't think the four offenses are sufficiently similar or they're having some difficulty putting together how do those offenses relate to an otherwise — the otherwise clause, an offense that otherwise involves. And Justice Alito, in one of his concurrences, says, well, you can read otherwise in a different way than the majority does. So to some extent, 16B is cleaner because we don't have to try and compare a made-up enumerated list, try and figure out what do those have in common, and then what do they have in common with the object list or object offense, okay, comparing the degree of risk. And we don't have to try and determine from the four if there is a minimum degree of risk established by one or more of those. So that's to look at your point, Judge Costa, from another perspective. If either or both are struck down by us or the Supreme Court, has anyone come up with a narrowing principle? Or would it have to be Congress would just have to list every single one? Well, I don't think that that is actually feasible. I suppose that's — and that's what they said in Sykes, Justice Kennedy said Congress could have done that. But that — to me, that's somewhat of an unwieldy principle to require an exhaustive encyclopedic list. And it goes against the idea that you can have a normative principle that establishes just a sort of baseline standard. No one has suggested, at least in our briefing, any other way to draft this statute. But normative principles are permitted and not unconstitutional. I mean, there's a guideline provision. That's where we get to the statute, Section 16B, through the guidelines. There's been some suggestion that — and the guidelines in some areas have moved towards this — should just base it on the length of the prior sentence, not the characterization of the offense. But I know the concern there is that different states are more — you know, give more severe and more lenient sentences as a general matter. So it would — that disparity would then get infected in the federal system. Right. But I know that's a proposal that's been out there. So just — you wouldn't have these issues if you just said, you know, in this many points, if it's a sentence below a year, one to five years, it's this. Right. But then I agree with you. You do run into problems of how courts define the offenses and how they apply their own sentencing regimes. And one state may say this offense — the same offense warrants five years and another only one year. And so then what do you do with that? You began by saying she loses for three reasons. First reason was foreclosure. Foreclosure. What's the authority that she's foreclosed for making the argument? Well, she can make the argument. It's not — the issue itself is not foreclosed, because I agree this Court hasn't ruled in a binding system. What did you mean by foreclosed? So what I mean by that, Your Honor, is the premise of the argument. Mr. Gonzalez-Longoria argues at page 12 of the blue brief that the residual clause of ACCA and 16b cannot be However, from that argument, ACCA is already held to be constitutional as we stand here today. And if ACCA is constitutional and he's arguing that the two can't be meaningfully distinguished, then 16b has to stand. Right. That's what I mean by foreclosed. Obviously, she can make the argument. But Novaris isn't controlling on us. It's not controlling because it's not precedential. It's not published. However, I would submit that it is persuasive, even though there's not substantial analysis, if any analysis, in the panel's opinion. However, it was briefed. If you go back and look at the briefs in that case, the parties did brief it. And this Court, three, you know, three distinguished members of this Court, Judge Barksdale, Judge Elrod, and I forget the third member of the panel. I apologize. How about distinguished two? Absolutely, Your Honor. But the Court did reject the argument. So it does at least provide some insight into what three members of this Court thought about the argument at that time. So then getting back to, you know, just the merits. The converse, by the way, Judge Higginson, is not necessarily true, I think, because of the contextual and textual differences that we were talking about with respect to ACCA and 16b. If ACCA stands, 16b has to stand. But if ACCA is struck down, depending on if and how it is struck down, 16b could still survive. It just depends on what happens there in the Supreme Court. I do think that 16b provides, as I said, a normative principle. As far as arbitrary enforcement goes, the analysis and the methodology under 16b resorts to the categorical approach. You examine the elements of the offense. By definition, that is an objective test. It is not subjective. This is not a case of a policeman on a beat trying to decide one day or the next whether someone's conduct is annoying on a street corner or whether or not a merchant is charging an unreasonable rate for sugar. That's the Cohen case. We do have objective standards. The categorical approach has been around since Taylor in 1990. Courts have been applying it for over 25 years. I think courts do have sufficient and extensive experience in trying to identify the ordinary case. That was one of the concerns in Johnson. Identifying the ordinary case, you look at the elements of the offense. You examine whether or not, as with burglary, the offense has a settled legal meaning. And you apply common sense, everyday human experience. To give you an example, in Sykes, the Supreme Court addressed the offense of flight from a law enforcement officer. That was under ACCA. But the idea is that the methodology is comprehensible and capable of application. The court looked at the offense. Eight members of the court were able to identify, in the ordinary common sense view, what flight from a law enforcement officer entailed. And they said it did involve substantial risk. And the court used terms like inherent in the offense. Everyone knows. It is well known. How is it well known? How is it inherent? These are themselves somewhat subjective terms, but they're the best we have because, as Justice Marshall said, condemned to the use of words, we can never have 100% mathematical certainty. So I think we are able to apply the standard. Courts have been doing it for several decades. And if you say that it is unconstitutionally vague now, I think you're throwing out the categorical approach, or at least certainly calling that into question, because that's the idea behind the categorical approach. You do have other tools that the Supreme Court has said you can look to. Ms. Ling mentioned them. They are in my brief. The court can look to case law. It can look to things like or the be-all, end-all of what this statute means. But rather, these are tools that if a court is struggling with how to define the ordinary case, there are resources that the court can consult to try and determine what the ordinary case is. Is this statute perfect? No. Is it hard to apply at times? Yes. But that's not the standard. It may be imprecise with respect to some offenses, but that doesn't mean that it's vague in all of its contexts. And that's the standard. For vagueness, you have to show that this statute contains no comprehensible course of conduct whatsoever. And I just think that cannot be the case here in light of cases like Leocal and cases that this Court has said. We have no trouble defining, for example, indecency with a child by sexual contact. That's the Velazquez-O'Vera case. We have no trouble deciding that this offense by its nature involves a risk of force. The cases frequently involve a risk of confrontation. If there's a risk of confrontation, there's very likely to be a risk of the use of force. My time is almost up, but I think those are all the points that I wanted to make unless the Court has any additional questions. You don't require me to use all your time, Mr. Reed, so thank you very much. Thank you, Your Honor. So I would ask the Court to affirm the judgment of conviction in this sentence. Thank you. Thank you, sir. Ms. Lane, you have some time for a vote. Thank you, Your Honor. I think out of a multitude of issues that I want to address, the most important is this concept that we waived it by not briefing as applied. And the Honorable Counsel's mentioned the Clark case. I just want to say it's clear from Supreme Court precedent that when you claim a statute is vague in all its applications because of the potential for arbitrary enforcement, a separate as-applied challenge is not required. And the Supreme Court made clear of that in Morales. And as Justice Breyer explained, if every application of the ordinance is an exercise of unlimited discretion, the ordinance is invalid in all its applications. And this Court's decision in Clark is not to the contrary because in that case this— Almost like a standing question. I mean, you hadn't been injured. Your client hadn't been injured by vagueness. Because whatever he did is certainly not vague in application of the statute. Your Honor, that's—I understand. That's not the issue with respect to—yes. I mean, you got a statute like Coates where it was like annoying conduct. And in that case, the Court said, you know what, of course there's some conduct that's annoying. But that's not the problem with the statute. The fact that some cases, some instances would fall under it does not make the statute constitutional. And here's why. Breyer had a very good example also in the— But it's not some cases fall under it clearly, but it's your case that falls under it. Your Honor, I have to disagree with that because there's— I know, but I mean, I think you're kind of weak on that. No, but we don't have to argue that. And the— I know, I know. The issue is that in Clark, Your Honor, in that case, the Court specifically distinguished Coates—the Coates and—because unlike in that case, the statute in Clark does not leave the decision as to what qualifies entirely up to law enforcement because the Supreme Court had restricted the conduct there, which was immoral acts to prostitution. So we don't have that here. We've got the Supreme Court, yes, in Leocal did say that it is—got to be at least more than a negligent mens rea. But it did not give you any idea about how to define the ordinary case, Your Honor. And so that's what the issue here—and I just want to make clear again the fact that there could be some range of conduct. It's not really whether some conduct could fall under it. I mean, I think, again, going back to annoying or—Brier gave a great example, he said, in the Morales case. He said, you know what—because Scalia was saying, you know, these people clearly loitered. They knew what was going on. It applied to them. But the point is this. You could have a statute—here's the example he gave. You could have a statute that says it's a crime to commit wrong. It's a murder. He said, but you could no more apply that statute to a mass murderer than you can apply this statute constitutionally to a mass murderer than you can apply this statute to the loiterers. Why? Because it just leaves too much discretion. And that's exact—the Supreme Court— But it doesn't define—it doesn't define anything. That's weird. Well, and we have— You do have—you do have perimeters of a definition here. I mean, you have to box it in some way. There's nothing— Wrong doesn't box anything. You box it in—the only way you can box it in is by looking at the range of conduct, which ranges from, like in the Sanchez-Espinal case, all the way from harassment to strangulation. And, you know, it's just—and then there's no objective way to say what is the ordinary case. And this is exactly what was bothering the Supreme Court in the argument in Johnson. And they also raised up extortion as being the same thing. I mean, Justice Scalia said, well, what is extortion? For one person, it could mean, you know, I'm calling you up and I'm going to release this bad fact about you unless you pay up. And for another, it's just I've got your wife and I'm going to kill her unless you give me a million dollars. So, I mean, it's just—it's just an arbitrary—it's where to say it on the continuum. And— But if client—the trouble—we're allowing pretrial detentions on the same standard. That's what I keep coming— Yes, but actually, Judge, there, I'm going to say we are on the same standard, but there's so much more that goes into that because there's—you look at actually what his offense was and you've got—I mean— Crime of violence creates a rebuttable presumption you're going to be incarcerated. Crime of violence, you know, predicated on a substantial risk of force.  I'm sorry, my time is up, Your Honor. I'm sorry. I think you're briefed, don't worry about it. I think so. Thank you. Thank you. Thank you for— Thank you, Mr. Reid, both for arguments that were well prepared and helped the court. Thank you. Thank you. Call the next case.